# D. V. Ahl, Appellant, *v.* Q. P. Ahl, Administrator of John A. Ahl, deceased.

*Equity—Master's findings of fact—Conclusiveness of decree.*

A master's finding of fact confirmed by the court below will not be reversed by the Supreme Court unless manifest error is made to appear.

*Partnership—Agreement to pay rent for use of partner's property—Master's finding of facts.*

A finding by a master confirmed by the court below, that a partnership agreed to pay rent to one of the partners for real estate owned by him and used in the partnership business, will not be reversed by the Supreme Court where there is sufficient evidence to sustain such finding.

Where, on a bill in equity for an accounting between partners, the lower court after careful consideration of the evidence reverses a master's finding, previously concurred in by the court, that a credit claimed had been reduced by subsequent charges, the Supreme Court will not reverse the final conclusion of the lower court if no manifest error is shown, and there is evidence sufficient to sustain such conclusion.

Argued April 25, 1898.   Appeal, No. 324, Jan. T., 1897, by plaintiff, from decree of C. P. Cumberland Co., April T., 1883,

No: 1, on master's report.   Before GREEN, McCOLLUM, MITCH-
ELL, DEAN and FELL, JJ.   Affirmed.

Exceptions to master's report.

The facts appear by the opinion of McPHERSON, J., of the
12th judicial district, specially presiding, the material portion
of which was as follows:

This bill was brought to settle an account between the mem-
bers formerly composing the firm of J. S. Ahl & Co.   Owing
to the lapse of time and the consequent lack of evidence, and
to the difficulty in understanding the books and papers that
remain, there is considerable obscurity about certain matters in
controversy.   In order to throw as much light upon them as
possible, it may be well to supplement the findings of the
master by stating afresh the facts bearing upon the general sit-
uation, and also the facts bearing upon the particular matters
in dispute as they come in turn to be considered by the court.
So far as the findings herein differ from the master's findings,
they are to be taken as a substitute for his.

One chapter of the partnership business was considered in
Ahl v. Ahl, 176 Pa. 466; and I cannot do better than repeat
here the facts found by Mr. Justice WILLIAMS on page 474 of
that case, with such additions as the present suit requires:
" The firm of J. S. Ahl & Company consisted of J. S. Ahl,
John A. Ahl and D. V. Ahl, residents of Cumberland county,
Pa.   They were engaged in the manufacture and sale of pig
iron at Antietam, Maryland.   They obtained much of their iron
ore from a tract of land in West Virginia, known as the Vir-
ginia Ore Bank.   · The furnace at Antietam was owned by D.
V. Ahl.   The tract of ore was owned by the members of the
firm as tenants in common."   The exact date when the firm
began business does not appear, but it was probably in the year
1866.   In 1868 John S. Ahl died, and the business was con-
ducted thereafter by the surviving partners without changing
the firm name.   No articles of partnership were offered in evi-
dence, and there is no proof otherwise concerning the terms of
the partnership agreement, nor whether it was oral or written.
It nowhere appears how much capital was originally contributed
by each member, nor whether the contribution was made in

money or in property; but it is conceded that the partners were to share the profits and bear the losses equally. From some date in 1870 until 1877 John A. Ahl was the managing partner or agent of the firm. "In 1877 the firm became somewhat embarrassed, and the continuous operation of the furnace was necessary to the payment of its debts. In order to make this possible, it was agreed that Q. P. Ahl, a son of one of the partners, should take the lease of the iron works and conduct the business in his name for the benefit of the firm. At the same time, the stock of coke and ore on hand was transferred to him, and the ore tract was conveyed to him. The business was then continued by the firm in the name of Q. P. Ahl and under the superintendency of William C. Bradley, until the first of April, 1880, when it was closed." Shortly after this date the furnace property passed into other hands, and in January, 1883, the present action for an accounting was brought. Little progress was made in the suit for thirteen years, and only recently (1896) were the partnership transactions brought under examination before a master. Meanwhile both parties to the suit have died, and the master and the court are presented with a mass of accounts growing out of the extensive operations of a firm engaged for fifteen years in manufacturing iron, but with little oral testimony to explain the difficulties and ambiguities that arise upon every hand. Moreover, the partners were interested in other business enterprises, and these various affairs touch the partnership at so many points, and in such different relations, that no one now alive can decide with certainty to what enterprise or to what person the money liability of many transactions should be justly charged. Under these circumstances accuracy is not possible. Nothing more can be done than to use carefully the unsatisfactory evidence still at hand; and even with careful use, it is to be expected that mistakes will be made. This is a matter for regret, but for the long delay and the consequent difficulty in reaching a correct conclusion, no one is to blame save the parties themselves.

1. The item most discussed is the defendant's claim to a credit of $67,711.01, money advanced or paid in one form or another into or on behalf of the firm by John A. Ahl during the years preceding 1870. As already stated, during the period from 1870 to 1877, the affairs of the partnership were carried on

by John A. Ahl as the managing partner. The firm books contain an account beginning in 1870 and ending when the business was put into the name of Q. P. Ahl, and upon this account John A. Ahl is charged and credited as agent with various items. The precise scope of his agency it is perhaps impossible now to determine. The plaintiff alleges that this term was only intended to include the business carried on through the Hagerstown Bank, while the defendant asserts that it covered substantially all the transactions of the firm during the specified period. Both views find support in the evidence, and after this lapse of time it is probably impossible to be sure which view is correct. But this much is certain; there was a period in the life of the firm, during which John A. Ahl occupied a special position of some kind in its affairs; this position was recognized by both partners and was called an agency; and the books contain an account between John A. Ahl as agent with the firm of which he was a member.

It is also undisputed that the moneys received and paid during the agency period were accounted for between the partners and a balance struck, showing a small sum—$16.91—to be due the defendant. This balance is shown upon the so-called "Middleton statement;" and the contention between the parties may be stated in the following form: Does that statement embrace not only the agency account, but also the item of $67,711.01 already referred to? The Middleton statement was made in the year 1876, probably toward the end of the year, and is the last account stated between the partners. Several other statements are in evidence, and have more or less bearing upon the question now being considered. Without going into the details of these statements,—obscure and ambiguous as they are in some of their items—or the details of the accounts appearing upon the books, or of the bank deposits, checks and other papers in evidence, it is enough to say that they have all received consideration, so far as they seemed to be relevant to the present inquiry. From the whole evidence, including the oral testimony, I find as a fact that the Middleton statement included nothing more than moneys received and paid during the agency period, with the exception of two or three items concerning which I am not able to speak with confidence. The plaintiff asserts that these items belong to the individual account of

John A. Ahl, and this is denied by the defendant. In the absence of other proof upon the subject than is afforded by the items themselves, I cannot come to a satisfactory conclusion, but the presence of these items in the statement does not affect my judgment regarding its character as a whole. On its face it professes to be a statement of John A. Ahl as agent, in account with John S. Ahl & Company. It is cast in that form throughout, and closes by striking a balance of $16.91 " due John A. Ahl, agent." In this form, and with this conclusion, it was submitted to and accepted by both partners as correct; and after twenty years of acquiescence it must be taken, as the master took it, to be a stated account between the partners, not now open to successful attack.

Indeed, this view of its character is not disputed by the plaintiff. He concedes it to be a stated account, binding upon both parties to the suit, and raises only the question already put: Does it contain the disputed item of $67,711.01 ? Upon this point the plaintiff encounters a serious difficulty. Confessedly, this item cannot be brought into the Middleton statement by any method of accounting. The subject was twice argued before the court, and upon the second argument the attention of counsel was especially directed to this particular statement; but no ingenuity of reasoning will even raise a doubt that it may include the item in question. It seems therefore to be an unavoidable conclusion—and in finding this fact I agree with the master—that the credit of $67,711.01 in favor of John A. Ahl has not been settled in any account between the parties, and, except as stated below, is still due and unpaid. This item refers wholly to his dealings with the firm before the period known as his agency. The master allowed the whole credit in his first report, but afterwards cut it down believing that subsequent entries should reduce it to $43,484.68. Upon this point I incline to disagree with the learned master. It seems to me that the weight of the evidence indicates that the entries he refers to were included in the Middleton statement, and therefore have been already charged against John A. Ahl. To use then now to reduce his credit of $67,711.01, would be to charge them a second time. Nevertheless, although the evidence has made that impression upon my mind, I admit freely that something may be said in favor

of the master's conclusion ; and as he heard the oral testimony concerning these accounts, I am not disposed to insist upon my view as correct. The advantages of hearing a witness explain an account that embraces numerous items and involves a constant reference to various books and papers, are obvious. On such an occasion, much may be said that does not get upon the record, and even of the recorded testimony a part may be impossible to understand, because the reader has no sure means of identifying the paper or item about which the witness is speaking. An explanation is begun and never finished, because the parties with the books before them can outrun the witness and see its correctness at a glance ; and concessions are made by a word or a gesture that are not even suggested by the stenographer's notes. For these reasons, although with some hesitation, I defer to the master upon this point, and agree with him in finding: that before 1870 John A. Ahl was a creditor of the firm to the amount of $67,711.01, that by subsequent charges this credit was reduced to $43,484.68, and that no part of this sum has been paid to him or has been included in any settlement made between the partners. He is therefore entitled to credit for this sum in the present settlement.

2. The next question to be considered is the defendant's objection to the rent allowed the plaintiff for the use of the furnace property by the firm during the period from 1868 to 1877. A rent of $2,000 a year for such use was allowed by the master, and this is conceded to be a reasonable price. The dispute turns upon the point whether there is evidence from which an agreement by the firm to pay rent in some amount may be fairly inferred. In considering this subject, it should be borne in mind that the fee of the furnace property was in Daniel V. Ahl before the partnership was formed. There is no evidence that this tract was put into the firm as an asset by the partnership agreement ; nor is there any evidence from which it could be found that, between the partners, the land afterwards became partnership property, save the one fact—and this is not sufficient—that the operations of the partnership were conducted upon the land: Shafer's Appeal, 106 Pa. 49 ; Hays v. Treat, 178 Pa. 310. The presumption therefore is, that as the fee of this property was in Daniel V. Ahl individually when the partnership began, so did the fee continue. But, while there is no

presumption that his land became partnership property, nevertheless the question remains, whether or not he may charge the firm with rent for its use. There seems to be little direct authority upon the subject. Neither the research of counsel nor my own investigation has discovered a case exactly in point; but I think the analogies of the law are against the right to make such a charge, unless there is proof of an agreement to pay, or of some special equity in favor of the charge. The general rule is well settled, that a partner is not entitled to claim interest upon money advanced for partnership purposes, unless otherwise agreed (Holden v. Peace, 45 Amer. Decis. 518, note) ; and it is merely extending the principle, to deny a partner rent for his real estate used for partnership purposes, unless he can prove an agreement that rent is to be allowed. The Pennsylvania rule concerning the allowance of interest is found in Gyger's Appeal, 62 Pa. 73 : " The allowance or refusal of interest depends upon the circumstances of each particular case." But, while this is more flexible than the general rule referred to, it still imposes upon the partner claiming interest the burden of establishing his equitable right thereto. If, therefore, there was no other evidence before the court, than that Daniel V. Ahl was the owner in fee of the furnace tract, and that the partnership operations were conducted thereon, I should be obliged to hold that no rent could be awarded to him for the use of the land. But there is an item of evidence, that seems to me decisive in favor of his claim. In June, 1877, shortly after the lease was made by the plaintiff to Q. P. Ahl, an agreement was executed by both parties to this suit, and by another person whose interest is not now important. This agreement is quoted upon pages 468–469 of Ahl v. Ahl, supra, and need not be repeated at length. It is thus referred to by the Supreme Court: " About the time work was begun in the name of Q. P. Ahl, an agreement was entered into by the members of the firm for the purpose of indemnifying him against any liabilities he might incur on their account in consequence of the use of his name in what was actually their business." The significant clause in the paper, so far as concerns the matter in hand is this : " The rental under said agreement " (meaning the lease by the plaintiff of the furnace property to Q. P. Ahl) " being assumed by John A. Ahl in his final settlement of the partnership business

of J. S. Ahl & Co. as heretofore." Bearing in mind that for
seven years the business of the partnership had been carried on
by John A. Ahl as agent or managing partner, and that in this
capacity he had received and paid out the money of the firm,
the inference is not easy to avoid that the partners had thereto-
fore agreed that a rent should be paid to the plaintiff by the
firm for the use of the land, and that John A. Ahl would
assume it, or charge himself with it, in the final settlement of
the partnership affairs. At that time no such settlement had
been made, and apparently none was in contemplation, for
Q. P. Ahl was to go on with the business on behalf of the firm.
But, whenever the settlement should be made, the defendant
was to assume the rent due under the lease to Q. P. Ahl, " as
heretofore " assumed by him. No doubt the clause quoted may
be construed to mean that John A. Ahl as an individual was to
assume the whole rental of the premises, as he had theretofore
assumed it; but this construction would not be fair, because it
is reached by confining the attention to the words alone, and
ignoring the preceding history of the partnership. Therefore,
as the lease to Q. P. Ahl provided for a rent of $2,000, and as
he was a mere cover for the firm of J. S. Ahl & Co., the agree-
ment of June, 1877, is convincing evidence to my mind that the
firm had theretofore agreed to pay the plaintiff an annual sum
for the use of his land. The fact that no such charge against
the firm is found upon any of its books in evidence and no such
credit to the plaintiff, is a circumstance against this conclusion;
but whoever examines the evidence before the court, will dis-
cover that the business was loosely done, and will not be sur-
prised because he does not find a particular item of charge or
credit on the books and papers still accessible. After sixteen
or seventeen years, it is impossible to say what may have been
lost or destroyed. As the partners were apparently content to
begin and continue their business without written articles, it is
not unreasonable to suppose that their agreement concerning
rent (whatever its terms may have been) rested also in parol,
and is capable of proof at this day only by some such incidental
means as seems now to have revealed it. That there was such
an agreement is the conclusion I have reached, and I base it
mainly upon the clause quoted from the paper of June, 1877.
If this will not support it, I think there is no evidence to justify
the allowance of any rent before March of that year.

About the rent for the three years following that month during Q. P. Ahl's administration, there can hardly be a question. The right to it rests upon Q. P. Ahl's express covenant contained in a written lease made to him by the plaintiff; and as Q. P. Ahl has been decided to be merely the firm of J. S. Ahl & Co. under another name, it is evident that the firm is bound in equity for the rent, and that the lease was not the individual obligation of Q. P. Ahl. The receipt he holds for three years' rent, no money having been paid, simply protects him as an individual, and has no other bearing.

I conclude therefore, that the plaintiff, in the settlement of his account with the partnership, is entitled to a credit for rent from 1868 to 1880 inclusive, at the rate of $2,000 per year, or a total of $24,000, instead of $18,000 allowed by the master.

On motion for reargument McPHERSON, J., filed an opinion which was in part as follows :

The reargument has convinced me that I should have followed the decided inclination I felt when the opinion was written, and should have allowed the defendant the full amount of $67,711.01, standing to his credit in the year 1870. The evidence before the court disposed my judgment strongly to this conclusion, but for the reasons stated in the opinion I deferred to the master's finding. But the reargument has satisfied me that the master was clearly in error in diminishing the credit to $43,484.68, and that the court was also in error in following his conclusion. I think the statement submitted by Mr. Webbert, accompanied with his explanations, amounts almost to a demonstration that the items relied upon by the master to reduce the credit were charged against the defendant and accounted for in other settlements, and were therefore not available again for such a charge. I therefore find as a fact—setting aside the previous finding on this subject—that in the year 1870 John A. Ahl was a creditor of the firm to the amount of $67,711.01; that this credit has not been reduced by any subsequent charges; and that no part of this sum has been paid to him, or has been included in any settlement made between the parties. He is therefore entitled to credit for this amount in the present proceeding.

*Errors assigned* were in sustaining and not sustaining certain exceptions to the master's report.

*W. F. Sadler,* for appellant.

*J. W. Wetzel,* with him  *C. W. Webbert,* for appellee.

OPINION BY MR. JUSTICE GREEN, May 9, 1898 :

After a patient and careful reading of the report of the master, and the opinions of the learned court below, and an examination of the arguments of the counsel of both parties, we are of opinion that the results finally reached are correct, and should be sustained.   As to the rejection of the credit of $4,000 claimed by the plaintiff, the question was purely one of fact and was found against the plaintiff and was confirmed by the court. The reasons given by the master and court below are satisfactory to us, and we see no cause for changing the decision.    The other principal matter at issue, to wit: the allowance of the item of $67,711.01 as a credit in the account of John A. Ahl, was the subject of a most careful consideration by the learned court below because of the difference between the master and the judge.   We have given a close and minute attention to the reasons which controlled the action of the learned judge, and are entirely satisfied as to their correctness.    He consented with much reluctance to the conclusion of the master that the amount of this credit had been reduced by subsequent charges to $43,484.68, but in his first opinion he expressed the conviction that these credits had been already charged against John A. Ahl, and therefore could not be charged again.    But on the reargument he was thoroughly convinced that the master was in error in reducing the total credit of $67,711.01, and he thereupon set aside that finding of the master and his own concurrence therein, and found distinctly as a fact that this credit had never been reduced by subsequent charges, and therefore that no part of it had been paid to John A. Ahl, or included in any subsequent settlement between the parties.   We are convinced that there was no error in this finding, and therefore sustain it. The other matters complained of in the assignments of error are sufficiently explained and considered in the opinion of the court, and do not require further mention.   We therefore sustain the final decree.

Decree affirmed and appeal dismissed at the cost of appellant.